IN RE APPLICATION OF MOORE'S TRANSFER, INC., OF NORFOLK, NEBRASKA. MOORE'S TRANSFER, INC., APPELLANT, v. NEBRASKA PUBLIC SERVICE COMMISSION, APPELLEE.

253 N. W. 2d 313

Filed May 11, 1977. No. 40999.

Gailyn L. Larsen of Peterson, Bowman, Coffman & Larsen, for appellant.

No appearance for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

SPENCER, J.

This is an appeal from a Public Service Commission (PSC) decision denying an application for authority to extend present operating rights. All protests filed with the PSC against the application had been withdrawn prior to the hearing. No brief was filed on behalf of the PSC, so the appeal was unopposed in this court. We reverse the denial of the application.

Applicant's present authority enables it to truck general commodities except those requiring special equipment from Norfolk, Nebraska, to points within a 155-mile radius thereof. The application involved a request for authority to extend present operating authority as it applied to the transportation of building materials, iron and steel, and iron and steel articles from Norfolk, Nebraska, to all points in the State of Nebraska.

Protests to the granting of the application were initially filed by five carriers. Those protests were withdrawn prior to the hearing by virtue of a voluntary restriction of the scope of the application. This restriction excluded the transportation of those commodities which because of their size and weight require the use of special equipment. It also specifically restricted against the transportation of traffic originating at the plant sites and facilities of Nucor Steel and Vulcraft Division of Nucor Corporation, at or near Norfolk, Nebraska.

After the objections were withdrawn the PSC notified applicant of its intent to process the application through its short form procedure, as provided for in its rules for an unopposed application. Subsequently, without explanation, it changed its decision and set a hearing at Norfolk, Nebraska, for April 29, 1976. This hearing was continued to and held May 19, 1976.

No objections or protests were of record and no one intervened in the proceedings. Six witnesses

testified in support of the application and five affidavits conforming to the form used for unopposed applications were filed in its support. The testimony indicated that the service requested was needed in order to, among other things, accommodate the shipping needs caused by the expansion of the growing industries within the shipping area.

One commissioner cross-examined the witnesses, obviously in the interests of two parties who were not objectors in the proceeding but who were present at the hearing. One of them had filed an objection but had withdrawn it when the applicant agreed to the restriction which was made a part of the application. The other one at no time filed an objection or intervened in the proceeding. The cross-examination of the witnesses established that by interlining they had been able to meet most of their needs in the past. The testimony indicated interlining promoted delays and was not entirely satisfactory service.

The PSC found the applicant, Moore's Transfer, Inc., fit, willing, and able properly to perform the service proposed and to conform to the PSC's rules and regulations. Over a vigorous dissent it also found: (1) that the proposed operations will not serve a useful purpose responsive to a public demand or need; (2) that any existing public demand or need for motor common carrier services in the area involved in this amended application can and will be served as well by existing carriers; and (3) that a granting of this application could result in a diversion of traffic from existing carriers contrary to the public interest.

It is obvious to us that these latter findings are not sustained by the record and are wholly arbitrary, capricious, and unreasonable. We can best characterize the findings of the PSC by quoting the following from the dissenting opinion of Commissioner Eric Rasmussen: "The majority Opinion further states that any existing public need of the shippers

could be served by existing carriers. It is difficult to see how such a conclusion was reached when there was no evidence of record to indicate what service the existing carriers could provide, as the application was unopposed. One Commissioner, even admitted at one point, that the Commission did not know whether the existing shippers possessed the requisite authority to supply the shipper's needs (T. 83), but discounted the shipper's testimony on the basis of a statement by him that, if they did have the authority, he saw no reason why they could not serve his needs (Order - p.4). Thus, the Commission rejected his testimony on the basis of an unsubstantiated assumption that such authority was, indeed, possessed by existing carriers. Thus, in view of the fact that there was no evidence of record to establish that the existing carriers could serve the shippers' needs, that there are acknowledged deficiencies in the services offered by existing carriers, and that, in many cases, the existing carriers have exhibited no interest in serving the shippers' needs, there could be no finding and should be no finding that any existing public need could be served by existing carriers.

"There is absolutely no evidence in this proceeding that a grant of authority under this application will result in a diversion of traffic from existing carriers contrary to public interest. This is especially true in view of the fact that the application was unopposed at the time of the hearing, all protests having been previously withdrawn. In fact, 'withdrawal of protests and opposition is an indication that existing motor carriers do not expect to suffer any material detriment from a grant of authority sought.' West Bros., Inc., Ext. - U. S. Highway 11, 98 M. C. C. 572, 574 (1965).

"The testimony and affidavits presented show that a substantial number of businessmen in Norfolk, Nebraska, believe that a useful purpose and need exist

now and will exist in the future for the services which Moore's plans (sic) to provide. Secondly, the fact that a significant number of Norfolk's businessmen testified in support of the application indicates (sic) that they believe that the existing carriers, even though they have provided satisfactory service for the most part, cannot perform and will not be able to perform as well as the Applicant. Finally, it is obvious that the services that the Applicant will provide will not endanger or impair the operations of existing carriers. If such a threat did exist, then those affected carriers would have protested, continued their protest, or intervened. The Applicant in this case has more than met his burden of proof.

"It is interesting to note that there has been absolutely no evidence presented against the application of Moore's Transfer. Yet, ample opportunity existed for protests or intervention by anyone opposed to the application. I am truly disturbed as to how the majority, in good conscience, can take the supporting testimony of a substantial group of Norfolk businessmen and interpret them to say that no demand exists. To do so, is to ignore all of the evidence."

We also quote the following from the dissenting opinion:

"I should also like to point out that the appearance of Abler Transfer, Inc. and especially Clark Bros. Transfer is highly irregular if not illegal. Clark Bros. protested the application and then withdrew, yet they were allowed to make a statement at the hearing. Abler could have protested or intervened up until the time of the hearing, yet they choose not to do so. Both should not have been allowed to give a statement.

"In view of the above evidence, it is extremely difficult to see how the majority, in the instant proceeding, could reject the testimony and affidavits of eleven (11) supporting shippers, and yet place such

great emphasis upon the adverse effect which a grant of authority would have upon competitive carriers who did not even care to protest the application. In so doing, and in allowing questionably entered testimony from the competitive carriers in opposition to an unopposed application, the Commission has arbitrarily departed from established procedures in a capricious manner which was not only detrimental to the interests of the Applicant in this proceeding, but which will also have a serious adverse effect on future proceedings of the Commission. There must be a rational basis for the conclusion as derived from the evidence. A review of the evidence reveals that the majority decision is in conflict with the great weight of evidence. Such lack of rational basis and the total disregard of precedent makes the action of the majority arbitrary, capricious and unreasonable. In light of the facts and evidence presented, this application should be granted."

Rule 11 of the PSC provides in pertinent part as follows: "(2) * * * Failure seasonably to file a protest will be construed as a waiver of opposition and participation in the proceeding. * * *

"(7) * * * Without meeting the requirements of (rules covering a formal protest) any person *other than a competing carrier* * * * may appear at a hearing on his own behalf only to make a statement on the record." (Italics supplied.)

Rule 12 of the PSC provides in pertinent part as follows: "(2) Petition: When Filed. A petition for leave to intervene in any proceeding should be filed prior to or at the time the proceeding is called for hearing, but not after, except to become a party of record to participate in oral argument or briefs only as to the evidence adduced and the law applicable thereto."

We have previously held that rulings by the Interstate Commerce Commission in dealing with the

subject of transportation by common carriers in interstate commerce may properly be considered by the Nebraska Supreme Court on appeals from the Nebraska Public Service Commission. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865 (1960).

The following holdings of the Interstate Commerce Commission appear to be pertinent herein: The withdrawal of protestant carriers adds greater substance to shippers' evidence in support of an application for motor carrier authority. Southern Forwarding Co., Ext. - Bowling Green, 110 M. C. C. 66 (1969).

In the absence of evidence by competitive carriers who are parties to the proceeding, the Public Service Commission has no evidence of record upon which a determination can be made as to whether or not such carriers can adequately serve the public need. Connecticut Limousine Service, Inc., Ext. - Buses, 105 M. C. C. 609 (1967).

Withdrawal of protests and opposition is an indication that existing motor carriers do not expect to suffer any material detriment from a grant of the authority sought. West Bros., Inc., Ext. - U. S. Highway 11, 98 M. C. C. 572 (1965).

General fears of potential diversion, as contrasted with specific evidence indicating probable harm, do not constitute proof that harm will result to competitive carriers because of an application. Caravan Refrigerated Cargo, Inc. - PUR - Bilyeu Refrigerated Transport Corp., 109 M. C. C. 843 (1972).

As noted previously, all formal protests to the application were withdrawn. One of these protests had been filed by a carrier permitted to make a statement. It would appear from Rules 11 and 12 that neither carrier should have been permitted to make a statement under the rules of the PSC. In any event, the substance of the statements were not sufficient to permit the PSC to reach the result it did.

A very significant consideration in this case should have been that Moore's already held authority which in effect gave it the ability to handle general commodities. This included the commodities involved in the application from Norfolk to points within approximately 155 miles thereof. The purpose of the application was to enable Moore's to handle a specified group of commodities from Norfolk to all points in Nebraska instead of being limited to the described radial territory. This would give it the capability of serving the extreme southern and western portions of the state for the specified group of commodities.

The PSC here was not confronted with an application involving some type of new service. On its face, the requested extension of authority was minimal. In view of this fact and the further fact that applicant demonstrated it was accommodating a public need, we cannot understand the decision of the PSC.

We are in full agreement with the dissenting commissioner that the denial herein was arbitrary, capricious, and unreasonable. The withdrawal of protests and the fact that no one intervened in this proceeding is a clear indication that existing motor carriers did not expect to suffer any material detriment from the grant of the authority sought.

From a review of the record there was absolutely no evidence of any kind presented in this proceeding by any party, including the PSC majority, of any possible real injury to existing carriers whatsoever. We do not see how there could be a legitimate finding that a granting of this application would result in a diversion of traffic contrary to the public interest. When the evidence is viewed in its proper context, it is obvious to us that the PSC should have granted the application.

We reverse the judgment of the Nebraska Public Service Commission herein and remand the cause

with directions to grant the authority requested as restricted.

REVERSED AND REMANDED WITH DIRECTIONS.